# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS LEON<br>Petitioner,<br>vs.<br>MATTHEW CATE,<br>*Secretary, California Department of Corrections and Rehabilitation*<br>Respondent. | CASE NO. 09cv2219 LAB (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

## I.
### INTRODUCTION

Jose Luis Leon (hereinafter "Leon" or "Petitioner") is a California state prisoner represented by counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner makes the following claims for federal habeas relief: (1) his due process rights were violated because there was insufficient evidence presented at trial to support a second degree murder conviction and related firearm enhancement based on a theory of aiding and abetting; and (2) his due process and Sixth Amendment rights to an impartial jury and fair trial were violated when a juror stated the jury had not deliberated on a special allegation gang enhancement.

//
//
//

## II.

## PROCEDURAL HISTORY

*A.  State Court Proceedings*

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a March 23, 2006, jury verdict finding Petitioner guilty of one count of second degree murder (CAL. PENAL CODE § 187(a)).[1] The jury further determined Petitioner was a principal in the commission of the offense (§ 12022.53(d) and (e)(1)), and committed the offense for the benefit of a criminal street gang (§ 186.22(b)(1)). (Lodgment No. 1 at 1-2.). Petitioner was also convicted of one count of making a criminal threat (§ 422), using a firearm in the commission of the offense (§ 12022.5), and committing the offense for the benefit of a criminal street gang (§ 186.22(b)(1)). The trial court sentenced Petitioner to 40 years-to-life in prison. (*Id.* at 5.)

Petitioner appealed his convicted to the California Court of Appeal, Fourth Appellate District. On March 25, 2008, the California Court of Appeal issued a reasoned opinion, affirming the trial court's judgment and remanding the case for resentencing in consideration of a separate case involving Petitioner. (Lodgment No. 1 at 38-39.)

On July 8, 2008, the Supreme Court of California denied Petitioner's appeal. (Lodgment No. 7.)

*B.  Federal Court Proceedings*

Petitioner filed his original petition for federal habeas relief on October 7, 2009. (Doc. No. 1.) On January 22, 2010, Respondent filed a motion to dismiss Leon's petition because it contained two unexhausted claims. (Doc. No. 6.) On September 9, 2010, the District Court adopted the Report and Recommendation of this Court, and ordered Petitioner to either voluntarily dismiss his petition or file an amended petition containing only exhausted claims.

On September 22, 2010, Leon filed an amended petition. (Doc. No. 16.)

On October 19, 2010, Respondent filed an answer to the petition. (Doc. No. 18.)

//

---

[1] All further statutory references in this Report and Recommendation are to the California Penal Code, unless otherwise noted.

## III.

### FACTUAL BACKGROUND[2]

"On April 27, 2003, Juan [Mendoza] got together with his friends Jose Salcedo and Jessie Benavides. Although they were not gang members, Juan and Benavides looked like gang members in that they had shaved heads and wore the type of clothing that gang members commonly wear. Juan drove a green Cadillac that was very low to the ground, with rims that went out and tinted windows.

At approximately 4:00 that afternoon, Juan drove Salcedo and Benavides to a friend's apartment near Cesar Chavez Park in San Ysidro, and parked his Cadillac. While Juan was standing in the doorway of the apartment complex, he noticed a teenage boy taking something from the car. Juan, Salcedo, and Benavides decided to get into Juan's Cadillac to try and find the boy.

Juan drove the Cadillac toward Cesar Chavez Park. Benavides sat in the passenger seat, and Salcedo sat in the middle of the back seat. As the group drove down Sycamore Road, Benavides and Salcedo saw a group of men standing in front of a house. As Juan drove by, Salcedo witnessed one of the men throw his arms up in the air and say, in an angry manner, "What's up?"

Juan drove the group to the park, but they did not get out of Juan's car. Juan made a U-turn and drove up Sycamore Road in the direction they had previously traveled. As they approached the area where Salcedo and Benavides had seen the group of men, one of the men from the group walked into the middle of the street, while another man, later determined to be Leon, stood in the street. The person in the middle of the street, who the People alleged was Jessie Fletes, motioned for Juan to stop his car.

Leon's companion approached the driver's side window of Juan's car, and Leon approached the passenger's side window. Both Leon and his companion asked whether the occupants of Juan's car were gang members. Juan, Salcedo, and Benavides responded in the negative. As Leon's companion moved toward the back of the car, Leon stood next to the passenger side window, looked at Juan, and said something to the effect of, "Were you the one who snitched on my friend?" Juan did not respond. Benavides said something like, "We have already taken care of that problem." Benavides told Leon that he lived nearby. In response, Leon lifted up his shirt, displaying a gun tucked in his pants and said angrily, "What, do you want me to shoot you?"

Juan attempted to drive away. Within seconds, Leon's companion fired a gunshot that struck Juan in the back of the head, killing him. Benavides stepped on the gas pedal, and Salcedo reached over Juan from the back seat to steer the car away to safety."

(Lodgment No. 5.)

## IV.

### STANDARD OF REVIEW

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEPDA"), which applies to all petitions for writ of habeas corpus after the statute's enactment. *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed

---

[2]These facts are taken from the California Court of Appeal's opinion issued on March 25, 2008. (Lodgment No. 5.) Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *See Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

after AEDPA's enactment, and is consequently governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Under AEDPA, a federal habeas corpus petition may be granted only if Petitioner demonstrates the state decision denying relief was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007).

When determining what constitutes "clearly established federal law" for purposes of AEDPA, federal courts look to United States Supreme Court holdings at the time of the state court's decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412) (2000)). In addition, Ninth Circuit law may be considered for its "persuasive authority in applying Supreme Court law." *Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir. 2004) (quoting *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000)), overruled in part on other grounds by *Andrade*, 538 U.S. 63 (2003)); *see also, Clark v. Murphy*, 331 F.3d 1062 (9th Cir. 2003) (nothing while circuit law may be persuasive authority, "only the [United States] Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied").

The "contrary to" and "unreasonable application" clauses contained in section 2254(d)(1) have independent meaning. *Williams*, 529 U.S. at 404-05; *Lambert*, 393 F.3d at 974; *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). A state court decision is "contrary to" clearly established federal law as determined by the United States Supreme Court if (1) the state court applies a rule different from the governing law set forth in Supreme Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court case, but reaches a different result. *Williams*, 529 U.S. at 405-06, 412; *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Andrade*, 538 U.S. at 73; *Lambert*, 393 F.3d at 974; *Clark*, 331 F.3d at 1067. A state court is not required to be aware of clearly established applicable Supreme Court cases, so long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision involves an unreasonable application of Supreme Court law if: (1) the state court identifies the correct governing rule, but unreasonably applies the rule to a new set

of facts, or (2) "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Andrade*, 538 U.S. at 76; *Lambert*, 393 F.3d at 974; *Clark*, 331 F.3d at 1067. For a state court decision to be an unreasonable application of clearly established federal law, the state court decision must be more than simply incorrect or erroneous; instead, the state court's decision must be "objectively unreasonable." *Rompilla v. Beard*, 545 U.S. 374, 380 (2009) (citing *Wiggins*, 539 U.S. at 520-21); *Williams*, 529 U.S. at 409; *Vasquez*, 572 F.3d 1029, 1035 (citing *Andrade*, 538 U.S. at 75); *see also, Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) (federal habeas courts determine the reasonableness of the state court's decision, not its reasoning). Thus, this Court will not disturb the decisions of the California state courts with respect to Petitioner's claims unless the state courts' resolutions of those claims were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d); *see also, Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir. 2004).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991); *Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Vasquez*, 572 F.3d at 1035; *Van Lynn*, 347 F.3d at 738. However, if the relevant state court decision does not provide an adequate explanation or a discernable basis for its reasoning on a particular claim, the federal court must conduct "an independent review of the record to determine whether the state court's decision was objectively unreasonable." *Richter v. Hickman*, 578 F.3d 944, 951 (9th Cir. 2009) (quoting *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006)); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

## V.

### DISCUSSION

A.  **Sufficiency of the Evidence**

In his petition to the state appellate court, and in his federal petition, Leon argues because

the jury did not convict him of first degree murder, they "unanimously agreed there was insufficient evidence to prove the killing was based on premeditation and deliberation." (Doc. No. 6 at 5.) Respondent argues the state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of United States Supreme Court precedent. (Doc. No. 18 at 6.)

The state appellate court rejected Petitioner's argument:

> "We reject Leon's claim that the jury's verdict finding him not guilty of first degree murder is relevant to a determination as to whether there is sufficient evidence to support the jury's finding Leon guilty of second degree murder...However, the verdict of not guilty on the charge of first degree murder does not demonstrate that the evidence was insufficient as a matter of law to support that charge. In any event, even assuming for the sake of argument that we were to conclude that there was insufficient evidence to support a conviction of first degree murder, such a conclusion would not preclude a determination that there is sufficient evidence to support a jury's finding that Leon was guilty of second degree murder. For the reasons stated above, we conclude that there is sufficient evidence to support this verdict." (Lodgment No. 5 at 11.)

As noted above, Leon raises a similar argument in his federal petition. Specifically, he contends:

> "Aside from the error that the California Court of Appeal conflated the motive to intimidate with intent to kill necessary for murder, the Court also found no significance from the acquittal by the jury for first degree murder based upon premeditation, effectively negating any finding the [P]etioner planned with Fletes to murder Mendoza. At most, the evidence showed Mr. Leon intended to intimidate Mendoza and others in the car by displaying a gun and threatening them, but the jury specifically rejected the theory that these actions showed a pre-conceived plan by the petitioner to encourage Fletes in his actions of shooting into the car." (Doc. No. 6 at 16-17.)

"The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) (quoting *In re Winship*, 397 U.S. 358 (1970)).

The standard for evaluating a constitutional claim of sufficiency of the evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Under *Jackson*, all evidence must be considered in the light most favorable to the prosecution. *Id.* This standard is applied to the substantive elements of the criminal offense defined by state law. *Id.* at 324. Since this claim arises on a federal habeas corpus petition, the Court owes even more deference to the jury verdict.

*Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005) (quoting *Wright v. West*, 505 U.S. 277, 296) ("In conducting our inquiry, we are mindful of the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.")

Sufficiency of the evidence claims are judged "by the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n. 16. In Leon's direct appeal, the state appellate court summarized the applicable law for murder based on a theory of aiding and abetting:

> "Murder is the unlawful killing of a human being...with malice aforethought. (Cal. Penal Code § 187(a)). Such malice may be express or implied. It is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned or malignant heart. (Cal. Penal Code § 188.) Murder that is committed with malice but is not premeditated is of the second degree. (Cal. Penal Code § 189).
>
> "A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging the commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of a crime."
> . . .
>
> "Advance knowledge is *not* a prerequisite for the liability of an aider an abettor. Aiding and abetting may be committed on the spur of the moment, that is, as instantaneously as the criminal act itself." *People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 742. "It is settled that if a defendant's liability for an offense is predicated upon the theory that he or she aided and abetted the perpetrator, the defendant's intent to encourage or facilitate the actions of the perpetrator must be formed *prior to or during* commission of that offense. *People v. Montoya* (1994) 7 Cal.4th 1027, 1039. "As to intent, proof of an aider and abettor's intent may be adduced by way of an inference from [his] volitional acts with knowledge of their probable consequences.
>
> "In general, neither presence at the scene of a crime nor knowledge of, but failure to prevent it, is sufficient to establish aiding and abetting its commission. However, among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense."*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.

The Court must accept the state appellate court's interpretation of state law regarding the requisite elements of murder based upon a theory of aiding and abetting. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")

The state court's decision, finding evidence sufficient to support the conviction, does not constitute an objectively unreasonable application of the *Jackson* standard. At trial, through the

testimony of Jose Salcedo, the People presented evidence Petitioner asked the victim whether he had "snitched on [Leon's] friend", Petitioner also showed a gun tucked in his pants, and then asked, "Do you want me to shoot you?" (Lodgment No. 2, v. 3 at 317-320.) In applying these facts to California law, the state appellate court found:

> "Leon was present at the scene and had a relationship with the perpetrator of the shooting...Further, Leon's conduct immediately before the offense constituted evidence that supports a conviction for aiding and abetting. By suggesting that Juan had "snitched on Leon's friend," and then threatening the occupants of the car, Leon provided a motive for the perpetrator to shoot Juan, which occurred moments later...While Leon claims that there was no evidence that he knew the shooter's criminal purpose in advance, the fact that moments before the killing Leon himself displayed a gun and threatened to shoot the occupants of the car provides sufficient circumstantial evidence from which the jury could infer his knowledge of the shooter's criminal purpose." (Lodgment No. 5 at 10.)

Accordingly, the Court finds the state appellate court applied clearly established federal law and its conclusion, that there was sufficient evidence to support Petitioner's conviction for aiding and abetting the murder of Juan Mendoza, was not an objectively unreasonable application of *Jackson*, under the facts of this case. Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

### B.     *Juror Misconduct*

In Petitioner's second claim, he contends his Sixth Amendment and due process rights to an impartial jury and a fair trial were violated when the trial court failed to declare a mistrial after receiving information the jury failed to deliberate on a special allegation gang enhancement to count 2. (Doc. No. 16 at 7.) Respondent argues, however, the state appellate court's rejection of this claim is supported by the conflicting accounts of Juror No. 5 and Juror No. 12, and the fact that 10 of 11 jurors, when polled, said they deliberated on the gang enhancement to count 2. (Doc. No. 18 at 14-15.)

The state appellate court summarized the factual background for this claim:

> "On December 23, 2004, the court received a partial verdict from the jury. The jury returned a verdict on count 2 as to Leon and on count 5, which pertained only to Fletes. The court clerk read the verdicts in open court, including a verdict pertaining to the gang enhancement allegation on count 2. The court then asked the jury panel, "Ladies and gentlemen, the verdicts as read, were they are they your verdicts?" The jury panel responded, "Yes, your honor." The court inquired whether any of the parties wished to poll the jury. Leon's counsel, Fletes's counsel, and the People all responded in the negative. The clerk subsequently recorded the verdicts.

The court then excused one of the jurors, who had a preplanned vacation, and informed the jury that the court would replace the departing juror with an alternate juror. Immediately thereafter, juror No. 5 inquired whether there was a gang enhancement attached to count 5. The court stated that the verdict on count 5 included a gang enhancement. Juror No. 5 stated that she did not agree with the gang enhancement. The court polled the remaining 11 jurors as to the verdicts on count 2, including the substantive count and the gang and firearm enhancement allegations. All 11 jurors individually expressed their agreement with the verdicts. The court then polled the remaining jurors as to count 5. As to the gang enhancement portion of the verdict, four jurors, including juror. No. 5 and juror No. 12, expressed their disagreement with the verdict. When asked whether he or she agreed with the verdict, juror. No. 12 stated:

> "I apologize. We did not deliberate on that issue, nor did we deliberate on that issue on the charge for Mr. Leon. And so it was never - when the charge was read in there, we did not discuss those issues. I'm having to decide right now on the spot."

After juror No. 12 made these comments, the court again polled the remaining jurors as to count 2. All of the remaining jurors indicated their agreement with the verdict on both the substantive count and the firearm allegation. All of the remaining jurors, with the exception of juror No. 12, indicated they agreed with the verdict on the gang enhancement allegation. Juror No. 12 stated that he or she did not recall having deliberated on the gang enhancement allegation, and stated, "I know that we did not discuss it, to my recollection." After this exchange, the court released the jury for the weekend.

The court then discussed with counsel various options with respect to how to handle the situation, including the possibility of having the new jury reconsider counts 2 and 5, and/or the gang enhancement on counts 2 and 5. The court decided that it would take no immediate action and that it would allow counsel to conduct research over the weekend as to the appropriate course of action.

The following Monday, outside the presence of the jury, the court heard further argument from all parties as to how to deal with the verdicts on counts 2 and 5. Fletes argued that the most prudent way to proceed would be for the prosecutor to dismiss the gang allegations as to counts 2 and 5 and to allow the new jury to consider the remaining counts. Leon moved for a mistrial on count 2 on the ground of jury misconduct. The prosecutor noted that the verdicts on counts 2 and 5 had been recorded, but suggested as an alternative that the court allow the new jury to consider the gang enhancement allegations on counts 2 and 5.

After hearing further argument, the court stated that it had researched the issue, that the verdicts were final verdicts, and that the court would not ask the jury to reconsider the verdicts on count 2 or count 5. The court noted that if there had been misconduct in the form of failure of the jury to deliberate, the proper course of action would be for the court to grant a new trial on the gang enhancement allegations. The court informed Fletes and Leon that it would entertain a motion for new trial on the gang enhancement allegations. While making its ruling, the court stated: "I think the only way we will know what happened is actually to bring the foreman in and to find out what the foreman's recollection is of the process and what they went through. Did they deliberate on these issues? Did they talk about these issues? And more than that, when they took their vote, what did they think they were voting on?"

Fletes's counsel stated that some of the other jurors might have a different recollection of events from that of the foreman. However, Fletes's counsel said that they

would "leave [that issue] for another day to talk to them about what was actually done." The prosecutor concurred, stating, "I think that if there is going to be any inquiry, we should wait [until] the conclusion of deliberations." Leon's counsel stated that he agreed that if any inquiry were to be done, each juror should be questioned individually. The court agreed that any inquiry of the jurors would have to be done out of the presence of the other jurors and stated, "We still may have to do that at the end of the trial."

In a supplemental motion for a new trial, Leon argued that a new trial was warranted on the gang allegation on count 2 on the ground that the jury failed to deliberate on the allegation. Leon argued that the court minutes for December 23, 2004 indicated that two jurors informed the court that no deliberations had taken place on the gang allegation on count 2. Leon attached a private investigator's report that recounted hearsay statements made by juror. No. 5 during a May 23, 2005 interview with the investigator and the prosecutor. During the interview, juror No. 5 stated that the jury had not deliberated on the gang enhancement allegation on count 2. Leon did not cite the investigator's report in his motion.

The court denied the motion for a new trial. The court noted that during the postverdict polling, at least nine of the jurors indicated that the jury had deliberated on the gang enhancement allegations. The court ruled, "There's nothing really presented before me that would indicate there's any reason in law or fact for the court to overturn the recorded jury verdicts..." (Lodgment No. 5 at 33-37.)

In denying Leon's motion for new trial, the state appellate court found "substantial evidence to support the trial court's implicit determination that no jury misconduct occurred." (*Id.* at 38.) The court also stated: "[t]he record contains no sworn statements attesting to jury misconduct. Further, when the court polled the jury, 10 of 11 jurors manifested their assent to the gang enhancement verdict on count 2." (*Id.*)

The Sixth Amendment guarantees a fair trial by an impartial jury. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Tinsley v. Borg*, 895 F.2d 520, 523 (9th Cir. 1990). When reviewing a claim of juror misconduct, "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *United States v. Klee*, 494 F.2d 394, 396 (9th Cir. 1974). However, "not every incident of juror misconduct...requires a new trial." *Id.* On collateral review, if misconduct occurred, "'a petitioner must show the alleged error had substantial and injurious effect or influence in determining the jury's verdict.'" *Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Petitioner alleges his rights to a unanimous verdict, and thus a fair trial, were violated because "it was uncontradicted that [Juror No. 12] had not deliberated on the [gang] enhancement prior to the verdict being recorded." (Doc. No. 16 at 22.) Although Petitioner is correct that

California law requires a unanimous verdict in a criminal case, *federal law* does not recognize this requirement in non-capital cases, and federal habeas relief is only available when a federal right is violated. *See Schad v. Arizona*, 501 U.S. 624, 634 n. 5 (1991) ("[A] state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict.") *See also, Apodaca v. Oregon*, 406 U.S. 404 (1972). Here, 10 of 11 jurors polled indicated they had deliberated on the gang enhancement allegation. Unanimity is not required and Juror No. 12's recollection of events did not affect the majority of the jury's verdict. Moreover, in accordance with AEDPA, deference is owed to the state appellate court's decision that "substantial evidence [exists] to support the trial court's implicit determination that no jury misconduct occurred."[3] (Lodgment No. 5 at 38.)

Because the state appellate court's rejection of Petitioner's jury misconduct claim is not contrary to, or an unreasonable application of, clearly established federal law requiring a showing of prejudice, it is recommended federal habeas relief be **DENIED** on this claim.

## VI.

### CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing Judgment be entered denying the Petition, evidentiary hearing, and dismissing this action.

**IT IS ORDERED** that no later than **May 5, 2011** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///

///

---

[3] Petitioner contends the trial court erred by not conducting an inquiry into possible juror misconduct as required under *People v. Hayes*, 21 Cal.4th 1211 (1999). Even if Petitioner established that the jury's failure to deliberate on the gang enhancement had a substantial and injurious effect as required by *Brecht*, federal habeas relief is inappropriate. "Long-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." *Tanner v. United States*, 483 U.S. 107, 127 (1987). In *Tanner,* the Supreme Court held Federal Rule of Evidence 606(b) prohibits not only inquiries into the jurors' deliberative process, but also inquiries into any irregularity during deliberation, except inquiries into "extraneous influence." *Id.* Here, Petitioner does not argue the statements of Jurors Nos. 5 and 12 contain any evidence of extraneous influence. Consequently, for purposes of federal habeas review, these statements are inapposite.

1    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the
2 Court and served on all parties no later than **May 26, 2011**.  The parties are advised failure to file
3 objections within the specified time may result in a waiver of the right to raise those objections on
4 appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *see also*
5 *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).
6    **IT IS SO ORDERED**
7 DATED: April 7, 2011

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court