# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS LEON,<br><br>　　　　　Petitioner,<br>　vs.<br><br>MATTHEW CATE, Secretary,<br><br>　　　　　Respondent. | CASE NO. 09cv2219-LAB (WMc)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION; AND**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　　Petitioner Jose Luis Leon was convicted in California state court of one count of aiding and abetting second degree murder, and one count of making a criminal threat. The jury also found that the murder was committed with a firearm, that Leon used a firearm while making the criminal threat, and that both offenses were committed for the benefit of a criminal street gang. He was sentenced to 40 years to life, and is currently in custody.

　　　　After unsuccessfully appealing to the California Court of Appeal and the California Supreme Court, Leon, who is represented by counsel, petitioned this Court for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter was referred to Magistrate Judge William McCurine for report and recommendation. After Leon amended his petition to include only exhausted claims, Judge McCurine issued his report and recommendation (the "R&R"), recommending denying the writ. Leon filed written objections to the R&R.

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Leon doesn't dispute the R&R's recitation of the factual history, or of the facts. Instead, he argues the R&R mistakenly concluded the state court's decision was not an unreasonable application of the law to the facts. He agrees with the R&R that his claims should be reviewed under 28 U.S.C. § 2254(d)(2). Under this provision, the writ can be granted if the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The R&R sets forth two sets of facts, taken from state court decisions. The first describes the killing. (R&R at 3:2–20.) The second addresses what Leon argues was juror misconduct during the trial. (*Id*. at 8:23–9:12.) The R&R points out that these factual determinations are presumed to be correct unless Leon rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Because Leon doesn't point to any contradictory evidence, and in fact doesn't even dispute the factual accounts, the Court accepts these facts as true and binding. Leon objects to various aspects of the R&R's recommended disposition of these two claims

**Sufficiency of the Evidence**

Leon cites *Jackson v. Virginia*, 433 U.S. 307, 319 (1980), and argues that the evidence presented at trial was legally insufficient to support his conviction for second degree murder, as well as the firearm enhancement. This is a "highly deferential standard," and a court applying it will defer to a jury's verdict if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *United States v. Milwitt*, 475 F.3d 1150, 1161–62 (9th Cir. 2007) (quoting *Jackson*, 443 U.S. at 319) (further citations omitted). Because this Court is conducting habeas review under § 2254, AEDPA adds a second level of deference; under AEDPA, the Court can grant relief on this theory only if the state court's application of the *Jackson* standard was unreasonable. *Boyer v. Belleque*, 659 F.3d 957, 964–65 (9th Cir. 2011). In other words, the Court cannot grant the writ even if it decides the state court made a mistake or applied *Jackson* wrongly; the writ is only available if the state court's judgment was objectively unreasonable. *Id*. This standard is rarely surmounted. *Id*. at 964.

Leon argues that the state court of appeal relied on the "natural and probable consequences" doctrine discussed in *People v. Mendoza*, 18 Cal.4th 1114, 1123 (1998). Under this theory, an accomplice is liable not only for the principal's "target offense," but also for any act that was a "natural and probable" consequence of that offense. The "natural and probable consequences" theory was withdrawn at trial, and instead the prosecution relied on an "aiding and abetting" theory. (RT 1633:24–1634:6.) The jury was instructed only on the latter. Leon finds fault with the state courts' reference to natural and probable consequences, but it appears they were actually referring to implied malice, a theory the jury was instructed on and which relies on the dangerous "natural consequences" of the intentional act. (*See* RT 1698:13–25 (instructing on implied malice).) Leon goes on to argue that because the jury acquitted on the first degree murder charge, they must have unanimously agreed he did not premeditate the crime, *i.e.*, that he did not intend Fletes to kill the victim. Even accepting, *arguendo*, this assertion,[1] the argument fails.

Leon, Fletes, and another man were gathered in front of a house. When the victim's car made a U-turn and passed through the same area, Leon and the third man stepped into

---

[1] Even if this were true, federal law does not require California's courts to make such an assumption. *See Ferrizz v.* Giurbino, 432 F.3d 990, 992–93 (9th Cir. 2005) (citing *United States v. Powell*, 469 U.S. 57 (1984); and *Dunn v. United States*, 284 U.S. 390, 393 (1932)) (holding that a jury's verdicts can stand even if they are inconsistent, and noting that "acquittal on one count may be explained as an exercise of lenity by the jury that is not necessarily grounded in its view of the evidence").

the street to stop the car, while Fletes motioned for the car to stop. This, by itself, shows the three had agreed on some course of action and were acting in concert to carry out their plan. There was also evidence Leon and the other two were members of the same gang, which further supports a finding that they were acting together. Leon and the third man approached the car windows and demanded to know whether the passengers were gang members. Leon also asked Juan Mendoza, the car's driver, "Were you the one who snitched on my friend?" When one of the passengers said something to the effect of "We have already taken care of that problem," Leon lifted his shirt, displaying a gun tucked in his pants, and angrily said, "What, do you want me to shoot you?" When Mendoza attempted to drive away, Fletes fatally shot him.

      The above scenario provided Leon and his compaions adequate opportunity to agree on a course of action. As the victim's car made its initial pass, Leon and Fletes had the opportunity to see it and note its resemblance to a car driven by gang members. They also had the opportunity to observe that the car's occupants were dressed like gang members. Indeed, this is likely why Leon, Fletes, and the third man stopped the car and asked the occupants if they were gang members. The circumstances of the shooting suggest Leon and the two other men thought the car's driver and passengers were probably members of a rival gang, or at least that they viewed them with suspicion and hostility. The jury could have reasonably inferred Leon intended to help stop the car and to interrogate the car's occupants, and that the encounter might lead to violence. Similarly, the jury could have inferred that Leon's display of a firearm and his angry threat to shoot one of the occupants was a signal or encouragement to his companion. But, at the very least, it demonstrated that Leon was prepared for and contemplating a shooting. The jury could have reasoned that, under these circumstances, it was no mere coincidence that one man credibly threatened murder and the other actually carried it out. The jury could reasonably have found all this, but could have decided there wasn't enough time for premeditation. A rational trier of fact,

/ / /

/ / /

therefore, could have acquitted Leon of first degree murder but convicted him of second degree murder on an aiding and abetting theory.[2]

The jury was also instructed on an implied malice theory. Under this theory, the jury could have convicted Leon if they determined that he aided and abetted an intentional action whose natural consequences are dangerous to human life (*e.g.*, shooting someone in the car, or shooting at them or at the car, perhaps as a warning or in retribution). In other words, even if the jury only believed Leon intended that a gun be fired towards the car or at someone in the car, they could have convicted him on an aiding and abetting theory. *See People v. Sarun Chun*, 45 Cal.4th 1172, 1205 (2009) (holding that shooting at an occupied vehicle, or aiding and abetting such shooting, would support conviction under an implied malice theory).

For all these reasons, it was not an unreasonable application of clearly established federal law for the state court to affirm Leon's second degree murder conviction.

**Juror Misconduct**

Leon's second argument pertains to a gang enhancement attached to the charge of making a criminal threat. Leon's objections focus on his claim that, because of juror misconduct, he was deprived of due process.

Leon points out that after the verdicts had been announced, affirmed by all jurors, and recorded, one juror said he or she didn't think the jury had deliberated on the question of gang allegations as they related to the murder charge against Leon.[3]

Crediting the lone juror's statement, Leon argues that the jury didn't reach a unanimous verdict on the gang enhancement. In order to show that this violated clearly established law as determined by the Supreme Court, *see Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007), he cites *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). *Hicks* held that, if state

---

[2] Of course, the jury's acquittal on the first degree murder charges could simply have been an exercise of lenity rather than logical analysis of the evidence. *See Dunn*, 284 U.S. at 393.

[3] The juror also said he didn't think they had deliberated on the gang enhancement as to Fletes. Leon, of course, cannot raise any claims Fletes might have.

law requires a unanimous jury verdict on a criminal trial, conviction on less than a unanimous verdict is a due process violation. Because California law requires jury unanimity, Leon asserts that he state courts' determination violated *Hicks*.

Although the R&R's factual summary is correct, some amplification based on the record is necessary to explain why Leon's argument is founded on an incorrect factual premise. After partial verdicts were read (RT, 1924:9–1925:16) and recorded (*id*., 1926:2–4), one of the jurors, who had a vacation scheduled, was excused and left the courtroom. This juror was to be replaced with an alternate before deliberation resumed.

While the alternate was being selected and substituted in, Juror number 5 asked whether there was a gang enhancement attached to count 5 (which was against Fletes, not Leon). The trial court polled the jurors, and all eleven (except for Juror number 5) expressed agreement as to count 5. The court began polling the remaining eleven jurors as to the already-recorded verdict. All eleven affirmed their verdict against Leon, including the gang enhancement on the criminal threat charge. (RT 1928:8–1930:1 (reading and affirming verdict).) The Court concluded from the polling that Juror number 5 was referring to the gang enhancement as to Fletes, not Leon; this view was supported by Fletes' counsel.

The court then began polling the jurors as to the counts against Fletes. It turned out four of them disagreed with the gang enhancement against him. (RT 1932:21–1934:9.) Three merely answered that it wasn't their verdict. Juror number 12, however, said that the jury hadn't deliberated about the gang enhancement as to either Fletes or Leon. The court then re-polled the jurors on the criminal threat charge as Leon (*Id*., 1934:10–1935:20.) All, including Juror number 12, affirmed their verdict. The court then re-polled them on the gang enhancement on the criminal threat charge against Leon. This time, all except Juror number 12 affirmed their verdict. (*Id*., 1935:21–1936:27.) Juror 12 didn't recall deliberating on that question. (*Id*., 1925:25–27.)

The trial court then released the jury for the weekend and permitted counsel to argue what should be done. After entertaining argument, the trial court determined that the verdicts were final, and that the court would not ask the jury to reconsider them. This is

consistent with *People v. Peavey*, 126 Cal. App.3d 44, 49 (Cal. App. 2 Dist. 1981) (after verdict was read, acknowledged by the jury, and recorded it was complete and court had no jurisdiction to reconvene jurors). The court also commented that it was impossible to be certain what went on in the jury room without questioning the foreman. At the close of trial, the court denied a motion for a new trial, pointing out that during the polling, most jurors had said the jury did deliberate on the gang enhancement allegations. The court also commented "There's really nothing presented before me that would indicate there's any reason in law or fact for the court to overturn the recorded jury verdicts. . . ."

Although there was disagreement as to some charges against Fletes, the California Court of Appeals found that "only one juror, juror No. 12, registered any disagreement with the gang enhancement verdict on count 2." (Lodgment 5 (Court of Appeals order) at 37 n.10.) Although this is unchallenged and therefore presumed true, the Court notes that this finding is also fully supported by the transcript.

After trial, the court discussed the sequence of events again, and found that the jury did deliberate, including on the gang allegations against Leon. (RT 2716:12–26.) This finding was based on the court's polling and discussion with the jurors, the fact that the court had instructed the jury to deliberate on the gang allegations, and the fact that the jury did return and affirm its verdicts, including as to the gang allegations. (*Id*., 2717:10–14.) The only basis for concluding anything was amiss with regard to charges against Leon was Juror number 12's professed lack of memory of deliberation, and Juror number 5's vacillation on that point. The announcement by two other jurors, when polled, that they didn't find the gang enhancement against Fletes adds some force to Leon's argument, but not to any great degree.

The trial court's determination that all twelve jurors had in fact deliberated on all counts against Leon and found against him unanimously, as reflected in the recorded verdict, isn't unreasonable and hasn't been rebutted by clear and convincing evidence. This determination is therefore binding on this Court.   And because the Court accepts that the
/ / /

jurors unanimously found against Leon as recorded in the verdict, *Hicks v. Oklahoma* has no application here.

**Conclusion**

For these reasons, Leon's objections to the R&R are **OVERRULED**. The R&R is **MODIFIED** to include the additional discussion set forth above and, so modified, is **ADOPTED**. The petition is **DENIED**.

**IT IS SO ORDERED**.

DATED: March 8, 2013

**HONORABLE LARRY ALAN BURNS**
United States District Judge